# Matter of Milagro DELCARMEN-LARA, Respondent

*Decided August 13, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A departure from the United States pursuant to a grant of advance parole is a "departure" within the meaning of section 212(a)(9)(B)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II). *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771 (BIA 2012), overruled.

FOR THE RESPONDENT: Idalis Perez, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Milor D. Perdomo, Counsel

BEFORE: Board Panel: GORMAN, Deputy Chief Appellate Immigration Judge; MONTANTE and GALLOW, Appellate Immigration Judges.

GORMAN, Deputy Chief Appellate Immigration Judge:

The respondent has filed a motion to reopen proceedings to pursue adjustment of status under section 245(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(a) (2024). In support of the motion, the respondent submitted evidence that she was paroled into the United States on January 1, 2024, pursuant to a grant of advance parole. In denying the respondent's motion, we overrule *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771 (BIA 2012), which held that an alien who leaves the United States temporarily pursuant to a grant of advance parole does not thereby make a "departure . . . from the United States" within the meaning of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2024). We now clarify that the term "departure" under this section of the INA does not include an exception for aliens who leave the country temporarily under a grant of advance parole.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of El Salvador. In a decision dated December 7, 2006, an Immigration Judge found the respondent removable as charged under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i) (2006), determined that she was ineligible for Temporary Protected Status ("TPS"), and ordered her removed from the United States. The Board affirmed the Immigration Judge's decision on June 17, 2008. In

2013, the respondent was granted Deferred Action for Childhood Arrivals ("DACA").

On June 30, 2015, the respondent filed a motion to reopen proceedings because she sought to submit an Application for Provisional Unlawful Presence Waiver (Form I-601A) in order to waive her inadmissibility under section 212(a)(9)(B) of the INA, 8 U.S.C. § 1182(a)(9)(B), and obtain an immigrant visa through consular processing. With this motion, she submitted evidence that her husband filed a Petition for Alien Relative (Form I-130) on her behalf and that United States Citizenship and Immigration Services ("USCIS") approved the petition on July 9, 2014. The Board denied the motion on August 6, 2015, because it was untimely and the respondent was ineligible for the waiver as a result of her final order of removal.

On May 27, 2025, the respondent filed a second motion to reopen proceedings to pursue adjustment of status under section 245(a) of the INA, 8 U.S.C. § 1255(a), based on the approved visa petition filed on her behalf by her husband. In support of the motion, the respondent provided documentation that shows she temporarily departed the United States and was paroled back into the country on January 1, 2024, pursuant to a grant of advance parole.

We requested and received supplemental briefing from the parties on the issue of whether the Board should reconsider its interpretation of the term "departure" within the meaning of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), as articulated in *Matter of Arrabally and Yerrabelly*, as well as whether an alien who leaves the United States temporarily pursuant to a grant of advance parole makes such a "departure."

## II. ANALYSIS

### A. Inadmissibility Under Section 212(a)(9)(B)(i)(II) of the INA

The INA provides that an alien who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible." INA § 212(a)(9)(B)(i)(II), 8 U.S.C. § 1182(a)(9)(B)(i)(II). The INA requires an applicant for adjustment of status to prove that he or she is "admissible to the United States for permanent residence." INA § 245(a), 8 U.S.C. § 1255(a).

In *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 779, we held in a split decision that an alien who temporarily leaves the United States pursuant to a grant of advance parole does not make a "departure" under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II). We reasoned that an alien's departure under a grant of advance parole is "qualitatively different from other departures, because it presupposes both that he [or she] will be permitted to return to the United States thereafter and that he [or she] will, upon return, continue to pursue the adjustment of status application he [or she] filed before departing." *Id.* at 778.

This decision sought to clarify prior Board precedent. In *Matter of Lemus*, 24 I&N Dec. 373 (BIA 2007) ("*Lemus I*"), we held that an alien is inadmissible under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(2)(B)(i)(II), even if the alien's departure was not made pursuant to an order of removal and was not a voluntary departure in lieu of being subject to removal proceedings or at the conclusion of removal proceedings. We examined the plain language of the statutory text to conclude that Congress did not intend to limit the definition of "departure" in this manner. *Id.* at 376–77. We reaffirmed this holding in *Matter of Lemus*, 25 I&N Dec. 734 (BIA 2012) ("*Lemus II*").

The issue before us—the meaning of "departure" under the INA—is a matter of statutory construction. *See, e.g.*, *Lemus II*, 25 I&N Dec. at 740. Based on our interpretation of the plain statutory language, we now conclude that a departure from the United States pursuant to a grant of advance parole is a "departure" within the meaning of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II). We will overrule *Matter of Arrabally and Yerrabelly*.

To determine whether an alien has effected a "departure" under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), we begin by assessing the plain language of the statute. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). We presume that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Adjudicators must adhere to the unambiguous meaning of statutory language, unless doing so would lead to an absurd or bizarre result that is "demonstrably at odds with the intentions of its drafters." *Matter of Forjoe*, 29 I&N Dec. 463, 467 (BIA 2026) (quoting *Matter of Briones*, 24 I&N Dec. 355, 361 (BIA 2007)).

In examining the plain meaning of the statutory text, we find insufficient evidence that Congress intended to limit the definition of the word "departure." Neither "depart" nor "departure" is defined in the INA. *Matter*

*of Arrabally and Yerrabelly*, 25 I&N Dec. at 774. To ascertain the ordinary meaning of an undefined statute, adjudicators may consult dictionary definitions for guidance. *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009). We observe, as we did at the time we issued *Matter of Arrabally and Yerrabelly*, that "depart" is defined as "to go away: leave." *Depart*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/depart (last visited Aug. 13, 2026). The statutory text does not contain limiting language that exempts certain departures from this definition.

The legislative history also lacks any indication that Congress intended to exclude departures pursuant to advance parole from the meaning of "departure." *See Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 776 (noting that the legislative history of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), is "rather sparse"). The pertinent statutory text was enacted pursuant to section 301(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-575 (effective Apr. 1, 1997) ("IIRIRA"). We have noted that "[t]he unifying theme of section 212(a)(9) is that all its subparagraphs seek to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter." *Matter of Rodarte*, 23 I&N Dec. 905, 909 (BIA 2006). Although Congress granted the Attorney General of the United States discretion to waive inadmissibility in certain circumstances under section 212(a)(9)(B)(v) of the INA, 8 U.S.C. § 1182(a)(9)(B)(v), there is insufficient evidence that Congress sought to exempt departures pursuant to advance parole from the definition of "departure." *See Cheruku v. U.S. Att'y Gen.*, 662 F.3d 198, 207 (3d Cir. 2011) (acknowledging that such departures may lead to "a harsh result").

As we previously recognized in *Lemus I*, "in every case where Congress has extended eligibility for adjustment of status to inadmissible aliens, it has done so unambiguously." *Lemus I*, 24 I&N Dec. at 378. For example, Congress expressly created a waiver of the inadmissibility grounds in section 212(a)(9)(B) of the INA, 8 U.S.C. § 1182(a)(9)(B), for aliens seeking adjustment of status under the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2193 ("NACARA"), *as amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997), and the Haitian Refugee Immigration Fairness Act of 1998, tit. IX, Pub. L. No. 105-277, 112 Stat. 2681-538 ("HRIFA"). *See id.* Congress's express provision of waivers of inadmissibility for NACARA and HRIFA adjustment applicants supports a conclusion that Congress did not intend a "departure" under section

212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), to exclude advance parolees. *Id.*; *see also Matter of Briones*, 24 I&N Dec. at 367–68.

We also deem it significant that Congress has clarified the consequences of departures for advance parolees in portions of the INA outside section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II). *See, e.g.*, INA § 201(c)(4)(A), 8 U.S.C. § 1151(c)(4)(A) (2024) (specifying that numerical limitations for family-sponsored immigrants include aliens who were paroled into the United States "who did not depart from the United States (without advance parole) within 365 days" or meet certain other conditions); INA § 245A(g)(2)(B)(ii), 8 U.S.C. § 1255a(g)(2)(B)(ii) (2024) (providing that periods outside the United States pursuant to advance parole procedures shall not be considered as a period outside the country for purposes of continuous physical presence required for legalization). "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).

Congress has also clarified the effects of brief departures in other portions of the INA where these departures may have adverse consequences. *See* INA § 240A(d)(2), 8 U.S.C. § 1229b(d)(2) (2024) (providing that a departure from the United States "for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days" will trigger a finding that an alien has failed to maintain continuous physical presence in the United States for certain cancellation of removal applicants); *see also* INA § 244(c)(4), 8 U.S.C. § 1254a(c)(4) (2024) (stating that continuous physical presence in the United States for aliens eligible for TPS will not be affected by "brief, casual, and innocent" absences). We presume that Congress acted intentionally in treating departures pursuant to advance parole differently throughout the INA. It is therefore important that Congress did not explicitly exempt advance parolees from the definition of "departure" in section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II).

Prior to *Matter of Arrabally and Yerrabelly*, it was widely recognized that a departure pursuant to advance parole may have significant, adverse consequences. Between the enactment of IIRIRA and the issuance of *Matter of Arrabally and Yerrabelly*, internal policy memoranda of DHS and the former Immigration and Naturalization Service ("INS") interpreted a departure under a grant of advance parole as a "departure" within the meaning of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II). *See Matter of Arrabally and Yerrabelly*, 25 I&N Dec.

at 781–82 (Pauley, dissenting). Documents authorizing advance parole also explicitly warned that parolees may be deemed inadmissible and ineligible for adjustment of status without a valid waiver. *See Cheruku*, 662 F.3d at 208 (discussing advance parole warnings); *see also Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 779 n.7 (same). This evidence further supports a conclusion that the Board impermissibly construed the definition of "departure" under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), to include an exception for aliens who left the country pursuant to a grant of advance parole.

The respondent has not identified, and we do not discern, evidence that another interpretation of "departure" is merited to avoid absurd or bizarre consequences in the case of an alien who has been granted advance parole. This Board previously expressed concern that an expansive definition of "departure" may include departures that occur by accident, deception, threat, or violence. *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 775. We emphasize that our holding applies to aliens who become inadmissible under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), after a temporary trip abroad undertaken pursuant to a grant of advance parole. Our decision does not consider these additional scenarios contemplated in *Matter of Arrabally and Yerrabelly*, which are beyond the scope of this matter. In the absence of demonstrated absurd or bizarre consequences for advance parolees, we are not permitted to reject the plain language of the statutory text. *See generally Jian Le Lin v. U.S. Att'y Gen.*, 681 F.3d 1236, 1240 (11th Cir. 2012).

We now clarify that the term "departure," as provided in section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), does not include an exception for aliens who leave the country temporarily under a grant of advance parole. This holding comports with the natural meaning of "departure," as well as the Government's longstanding interpretation of the term prior to *Matter of Arrabally and Yerrabelly*. Accordingly, *Matter of Arrabally and Yerrabelly* is overruled.[1]

---

[1] We recognize that the United States Court of Appeals for the Eleventh Circuit, the controlling jurisdiction in this case, has applied the then-definition of "departure" as articulated in *Matter of Arrabally and Yerrabelly*. *See Ortiz-Bouchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1357 (11th Cir. 2013) (per curiam). We do not construe the language in *Ortiz-Bouchet* to preclude the Board from revisiting the definition of "departure" under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II).

## B. Retroactivity

We must undertake a retroactivity analysis because we are explicitly overruling Board precedent. *Matter of Forjoe*, 29 I&N Dec. at 472. The test for retroactivity requires the Board to consider the following factors:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Matter of Cordero-Garcia*, 27 I&N Dec. 652, 658 (BIA 2019) (citation omitted). This case is not one of first impression. However, we determine that the first three factors in the test articulated above support applying our holding prospectively because we are explicitly overruling *Matter of Arrabally and Yerrabelly*, a longstanding Board precedent.

Regarding the fourth factor in the retroactivity test, we note that our holding will constitute a significant change with respect to the meaning of "departure" under section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), as well as eligibility for adjustment of status under section 245(a) of the INA, 8 U.S.C. § 1255(a). We also conclude that the Board's interest in applying the newly articulated rule does not outweigh past expectations based on the prior rule.

In consideration of the foregoing, we will apply this new holding prospectively. As our holding is prospective, we will not determine whether the respondent's temporary trip constitutes a "departure" within the meaning of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II), which would render her inadmissible and ineligible for adjustment of status. Instead, we must address the respondent's motion to reopen proceedings to apply for adjustment of status pursuant to the parties' remaining arguments.

## C. Motion to Reopen

We will deny the respondent's motion to reopen. Generally, an alien may file one motion to reopen, no later than 90 days after the entry of the final administrative order. INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7) (2024); 8 C.F.R. § 1003.2(c)(2) (2026). The respondent's May 27, 2025, motion to reopen was filed more than 16 years after we entered the final administrative order in this case on June 17, 2008. Therefore, her motion is untimely. The respondent's motion is also number barred because it is her second motion

to reopen these proceedings. The respondent has not shown that her motion falls within any exception to the motion to reopen time and number limitations enumerated in the section 240(c)(7)(C) of the INA, 8 U.S.C. § 1229a(c)(7)(C), or 8 C.F.R. § 1003.2(c)(3) (2026).

The respondent's circumstances also do not present an exceptional situation that warrants the exercise of our sua sponte reopening authority in these proceedings. *See Matter of G-D-*, 22 I&N Dec. 1132, 1133–34 (BIA 1999) (stating that generally "we invoke our sua sponte authority sparingly"); *see also Matter of J-J-*, 21 I&N Dec. 976, 984 (BIA 1997) (recognizing that the power to sua sponte reopen proceedings is limited to exceptional situations and is not meant to cure filing defects or "to otherwise circumvent the regulations, where enforcing them might result in hardship"). Becoming potentially eligible for relief from removal years after a final administrative removal order does not, in itself, constitute an exceptional situation. *See Matter of Yauri*, 25 I&N Dec. 103, 105 (BIA 2009) (indicating that becoming potentially eligible for adjustment of status is generally not a basis for granting an untimely motion to reopen); *see also Matter of H-Y-Z-*, 28 I&N Dec. 156, 161 (BIA 2020) (recognizing that equities acquired while remaining unlawfully in the United States after being ordered removed generally do not warrant discretionary reopening). In sum, we will deny the respondent's untimely and number-barred motion to reopen these proceedings.[2]

## III. CONCLUSION

Based on the foregoing, the respondent has not shown that reopening of proceedings is warranted. We overrule the holding in *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 779, that an alien who leaves the United States temporarily pursuant to a grant of advance parole does not thereby make a "departure . . . from the United States" within the meaning of section 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. § 1182(a)(9)(B)(i)(II). We also clarify that an alien may become inadmissible under this section of the INA by virtue of a trip abroad undertaken pursuant to a grant of advance parole.

**ORDER:** The respondent's motion to reopen is denied.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the

---

[2] Because the foregoing issues are dispositive of the respondent's motion to reopen, we will not address the parties' additional arguments. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the INA, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).